AO 72A
(Rev. 8/82)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

JASON BATES,

      Plaintiff,

vs.                        CIVIL ACTION NO.: CV210-088

AUDREY ANDERSON,
Unit Counselor,

      Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Jason Bates ("Plaintiff"), an inmate currently incarcerated at the Federal Correctional Institution-Satellite Low in Jesup, Georgia, filed a Complaint pursuant to 28 U.S.C. § 1331 and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), contesting certain conditions of his confinement. Defendant Audrey Anderson ("Defendant") filed a Motion to Dismiss. Plaintiff filed a Response, and Defendant filed a Reply. Plaintiff filed a Surreply. The undersigned converted Defendant's Motion into a Motion for Summary Judgment by Order dated March 10, 2011. In that same Order, the undersigned directed the parties to file any additional pleadings or evidence they wished the Court to consider. The parties did so. For the reasons which follow, Defendant's Motion should be **GRANTED** in part and **DENIED** in part.

## STATEMENT OF THE CASE

Plaintiff asserts Defendant removed him from a lower bunk and moved him to an upper bunk. Plaintiff alleges that Defendant assigned lower bunks to white individuals and assigned Plaintiff an upper bunk because he is black. Plaintiff states he attempted to pursue administrative remedies against Defendant, but was retaliated against with incident reports, verbal racial slurs, and "shakedowns."

Defendant contends that Plaintiff's claims against her should be dismissed.

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., ___ F. Supp.2d ___, 2011 WL 589830, at *2 (M.D. Fla. Feb. 18, 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that she is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).

AO 72A
(Rev. 8/82)

When the nonmoving party would have the burden of proof at trial, the moving party may discharge her burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322-23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Co., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

## DISCUSSION AND CITATION TO AUTHORTY

### I. Plaintiff's Equal Protection Claim

Defendant asserts that Plaintiff's allegations that she chose cell assignments based "solely on her racist whims and fancy" and that his cell assignments were due to Defendant's "racist bent and state of mind to discriminate against" Plaintiff are without merit. (Doc. No. 27, p. 17) (quoting Doc. No. 17, p. 12). Defendant avers that Plaintiff's assertions are conclusory and speculative and are insufficient to survive her motion for summary judgment. Defendant contends that Plaintiff's evidence suggests that Defendant had a lawful basis for assigning Plaintiff to the top bunk—he had been in a lower bunk for an extended period of time, despite having a lower bunk profile for a short period of time two (2) years prior to the incidents alleged in the Complaint.

Plaintiff alleges that he was assigned a lower bunk at all relevant times due to an injury he suffered. Plaintiff also alleges that he had no input about his cellmate when Defendant made the cell assignments, and it was only after Plaintiff objected to Defendant's acts of racial discrimination that giving inmates choices about their cell

3

AO 72A
(Rev. 8/82)

mates came to be. Plaintiff contends that there were at least ten (10) white inmates who occupied lower bunks who were not injured or medically incapable of climbing into an upper bunk, yet these inmates were not reassigned. Plaintiff also contends that the reason these inmates were not reassigned was because Defendant's state of mind "is predisposed to discriminate against all black or ethnic minority inmates under her immediate care and supervision." (Doc. No. 17, p. 4). Plaintiff asserts that Defendant's motion should not be granted, as her state of mind has been placed into question.

To establish an equal protection claim, a prisoner must demonstrate "that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 F. App'x 9, 12 (11th Cir. 2010) (quoting Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001)).

The only evidence before the Court reveals Plaintiff's conclusory and vague statements that Defendant moved him from a lower bunk to an upper bunk based on her alleged racial animus. Plaintiff contends that he had a lower bunk profile.[1] While Plaintiff did have a lower bunk profile, this profile was issued on May 30, 2007, and it expired on June 14, 2007, (Doc. No. 17, p. 11), which is more than two (2) years prior to the events Plaintiff set forth in his Complaint. In contrast, two of the three[2] inmates who were assigned to have the lower bunk in the cell with Plaintiff had lower bunk profiles issued during their assignment with Plaintiff. (Doc. No. 9-2, pp. 10-12).

---

[1] Plaintiff states on several occasions that he did have a lower bunk profile (see, e.g., Doc. No. 17, pp. 3, 9), and that the white inmates who were allowed to remain in a lower bunk did not have a lower bunk profile. If this were true, then Plaintiff-with-a-lower-bunk-profile would not be similarly situated with the white inmates who did not. Thus, as a matter of law, Plaintiff's equal protection claim would fail.

[2] "Inmate A" was issued a lower bunk profile, but it was not until after this inmate was assigned to be housed in Plaintiff's cell. (Doc. No. 9-2, p. 9).

AO 72A
(Rev. 8/82)

In addition, Plaintiff relies on blanket statements that Defendant discriminated against him because of his race, such as his statement that Defendant did not use a rotational list for cell assignments, but, rather, she made cell assignments based on her "racist whims and fancy." (Id. at p. 12). The undersigned notes Plaintiff's use of Donald Rutledge's Affidavit as support for his position. Mr. Rutledge asserts that it is "a commonly known fact among all inmates" that Defendant "condones and promotes racial discrimination." (Doc. No. 15, p. 5). Mr. Rutledge points to an incident purportedly occurring in September or October 2010; however, this alleged incident occurred a year after Defendant's alleged discriminatory act against Plaintiff, and this incident, even if true, does not reveal that Defendant acted on any racial animus on *her* part. In short, Plaintiff offers no evidence in support of his claim that Defendant discriminated against him based on his race. This portion of Defendant's Motion should be **granted**.

## II. Plaintiff's Retaliation Claim

Defendant avers that Plaintiff's assertion that she retaliated against him after he filed a grievance regarding his bunk assignment is conclusory, and, as such, his claim cannot survive a motion for summary judgment. Defendant contends that any searches of Plaintiff's cell were conducted in accordance with Bureau of Prisons' policy. Defendant also contends that Plaintiff's and Mr. Rutledge's assertions as to the nature and frequency of the cell searches are conclusory. Defendant further contends that Plaintiff does not provide any examples of the disparaging racial remarks she allegedly made, and his assertion that Defendant told him she would have an attorney and "cover up" if she were sued does not show retaliatory intent. (Doc. No. 27, p. 23). Finally,

AO 72A
(Rev. 8/82)

Defendant asserts that Plaintiff's claim that she "eyeballed" him is conclusory and at best, suggests a speculative retaliatory intent.

Plaintiff alleges that Defendant engaged in intimidation and harassment after he filed his grievance against her. Plaintiff also alleges that the affidavits he submitted are probative of Defendant's mindset after she was put on notice of Plaintiff's allegation against her.

"To state a First Amendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (internal citations omitted). Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." Id. An "inmate must prove that: (1) 'his speech or act was constitutionally protected'; (2) 'the defendant's retaliatory conduct adversely affected the protected speech'; and (3) 'there is a causal connection between the retaliatory actions and the adverse effect on speech.'" Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011) (quoting Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005)). "To establish causation, the plaintiff must show that the defendant was 'subjectively motivated to discipline' the [prisoner] for exercising his First Amendment rights." Id. (quoting Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008)). "It is well established that a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Id. (internal citation omitted).

Once a defendant moves for summary judgment, "the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify

affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." Crawford-El v. Britton, 523 U.S. 574, 600 (1998). The issue of intent is a question for the trier of fact. Direct evidence of an illegal motive will usually suffice to create a genuine issue of fact and preclude summary judgment. Harris v. Ostrout, 65 F.3d 912, 917 (11th Cir. 1995) (citing Swint v. City of Wadley, Ala., 51 F.3d 988, 1000 (11th Cir.1995)).

Plaintiff's filing of a grievance against Defendant is unquestionably a constitutionally protected act. There is no dispute as to whether Defendant was aware of this grievance. However, what remains open to dispute is whether Defendant took any action against Plaintiff as a result of his having filed a grievance. The Court notes Defendant's assertion that Plaintiff's contentions and his affidavits are conclusory and speculative, but Defendant's assertions are, as well. Defendant states that Plaintiff has been subjected to the same number of random cell searches as any other inmate, per Bureau of Prisons' policy, yet, Defendant offers nothing more than her own statements in support of this assertion. While Plaintiff's assertion that Defendant "eyeballed" him or made derogatory comments to him may not be supportive of his retaliation claim, Plaintiff's contention that he was subjected to more searches of his cell than other inmates were as retaliation is plausible. Unlike Plaintiff's equal protection claim, his retaliation claim should not fail as a matter of law. This portion of Defendant's Motion should be **denied**.

AO 72A
(Rev. 8/82)

III. **Qualified Immunity**

Defendant asserts that the evidence in this case shows that she did not take any retaliatory action against Plaintiff after he filed a grievance against her, and, accordingly, a reasonable officer would not have known that the actions she took were unlawful.

Qualified immunity protects a government official performing discretionary functions from suit in his individual capacity, so long as his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Gonzalez v. Reno, 325 F.3d 1228, 1232 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). A government official must first prove that he was acting within his discretionary authority. Id. at 1233; Ray v. Foltz, 370 F.3d 1079, 1081-82 (11th Cir. 2004). A government official acts within his discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority. Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006). Once the government official has shown he was acting within his discretionary authority, the burden shifts to the Plaintiff to show that the Defendant is not entitled to qualified immunity. The Supreme Court has established a two-part test to determine the applicability of qualified immunity: the court must determine whether plaintiff's allegations, if true, establish a constitutional violation, and whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001)[3]; Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004).

---

[3] In Pearson v. Callahan, 555 U.S. 223, ___, 129 S. Ct. 808, 818 (2009), the Supreme Court held that courts can exercise discretion in deciding which of the two Saucier prongs should be addressed first in light of the particular case at hand.

8

It was clearly established law in September 2009 that a correctional officer could not retaliate against an inmate who exercised his First Amendment right of redress. Accordingly, this portion of Defendant's Motion should be **denied**.

## IV. Damages

Defendant contends that she is entitled to summary judgment on Plaintiff's claims for compensatory and punitive damages.

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The purpose of this statute is "to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (citing Harris v. Garner, 216 F.3d 970, 976-79 (11th Cir. 2000)). "Tracking the language of [this] statute, § 1997e(e) applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody." Id. at 532. In Williams v. Brown, 2009 WL 2883496, at *5 (11th Cir. Sept. 11, 2009), the Eleventh Circuit stated in this unpublished opinion that, "[C]ompensatory damages under § 1983 may be awarded only based on actual injuries caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated. Pursuant to 42 U.S.C. § 1997e(e), in order to recover for mental or emotional injury suffered while in custody, a prisoner bringing a § 1983 action must demonstrate more than a *de minimus* physical injury." (internal citations omitted) (alterations in original). The Eleventh Circuit noted, however, that "[n]ominal damages are appropriate if a

plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages." Id. at *6 (quoting Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003)). "Thus, a prayer for nominal damages is not precluded by § 1997e(e)." Id. (quoting Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007)).[4]

Plaintiff does not set forth any evidence of a physical injury he suffered due to Defendant's alleged retaliatory action against him. Thus, Plaintiff's requests for compensatory and punitive damages should be **dismissed**. This portion of Defendant's Motion should be **granted**. Plaintiff's request for nominal damages should remain pending. (Doc. No. 1).

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant's Motion for Summary Judgment be **GRANTED** in part and **DENIED** in part. Plaintiff's equal protection claim and his claims for compensatory and punitive damages should be **DISMISSED**. Plaintiff's request for nominal damages and his retaliation claim should remain pending.

**SO REPORTED** and **RECOMMENDED**, this 9th day of May, 2011.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

---

[4] In Al-Amin v. Smith, ___F.3d ___, 2011 WL 1237941, at *7 n.10 (11th Cir. Apr. 5, 2011), the Eleventh Circuit left open the question of whether an inmate with no requisite physical injury can recover nominal damages.

10